UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KEITH I. HURST,
          Plaintiff,

v.

**OPINION AND ORDER**

15 CV 4703 (VB)

SUPERINTENDENT ADA PEREZ and C.O.
JILL GRISENTHWAITE,
          Defendants.
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Keith I. Hurst, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging that while incarcerated at Downstate Correctional Facility ("Downstate"), defendants Superintendent Ada Perez and Corrections Officer ("CO") Jill Grisenthwaite violated plaintiff's constitutional rights by failing to protect him from attack by two other inmates and denying him adequate medical care.

    Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #38).

    For the reasons set forth below, the motion is GRANTED.

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the SAC as true, and draws all reasonable inferences in plaintiff's favor.

    Plaintiff claims that on May 18, 2015, CO Grisenthwaite was escorting plaintiff and approximately thirty-six other inmates from "chow" back to the inmates' "dorm," when she allegedly went inside to unlock the door leaving the inmates outside in a courtyard unattended. (SAC at 2). As the inmates began walking inside, two unknown inmates approached plaintiff

1

from behind and cut him on both sides of his face and neck with sharp objects.[1]  The assailants told plaintiff that if he reported the attack to prison officials, he and his family "would get hurt." (Id. at 13).

The next morning, plaintiff reported the incident and was taken to the Downstate emergency room and examined by Downstate medical personnel.  Plaintiff claims a physician measured his cut and said it was six inches long.  Plaintiff also claims Downstate medical personnel said he needed stitches, but did not provide them because it was "too late," and that he should have been transferred to an outside hospital, but was not.  (SAC at 3).

Plaintiff was then moved to protective custody and Downstate personnel investigated the cutting incident.  Plaintiff claims he does not know why he was attacked and the incident was unexpected.

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

[1]  Various statements in plaintiff's submissions indicate he was cut once, while others claim he was cut twice or more.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.     Eighth Amendment Claims Under Section 1983

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).  Plaintiff alleges Eighth Amendment violations under two distinct theories:  failure to protect and denial of adequate medical treatment.

3

A.      Failure to Protect Claim

Plaintiff claims defendants violated his Eighth Amendment rights by failing to protect him from attack by two other inmates. Defendants argue that plaintiff fails to state a claim because he does not allege he was subject to a serious risk of harm, or that defendants were aware of any such risk and deliberately disregarded it.

The Court agrees.

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates, including protecting them against violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). The failure to protect an inmate from violence by other inmates constitutes cruel and unusual punishment when prison officials exhibit "deliberate indifference" to a substantial risk of serious harm to the inmate. Id. at 828; Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). However, it is not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials." Farmer v. Brennan, 511 U.S. at 833. Prison officials can be held liable only if they subjectively knew of and disregarded an excessive risk to inmate health or safety. Id. at 837.

The test for deliberate indifference when a plaintiff's claim is based on a failure to prevent harm has two parts: (i) a plaintiff must first demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm"; and (ii) a plaintiff must then demonstrate that the "defendant prison officials possessed sufficient culpable intent." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996). A prison official has sufficient culpable intent if she has knowledge that an inmate faces a substantial risk of serious harm, and she disregards that risk by failing to take reasonable measures to abate the harm. Id.; see also Farmer v. Brennan, 511 U.S. at 837 (explaining that this state of mind is "more blameworthy than

4

negligence" and is "equivalent to criminal recklessness"); Morales v. New York State Dep't of Corr., 842 F.2d 27 (2d Cir. 1988) (a prison official's negligent failure to protect an inmate from injury by other inmates is not cognizable under Section 1983).

The Court concludes the SAC fails to allege either prong of a failure to protect claim.

First, plaintiff has not alleged the conditions of his confinement posed a substantial risk of serious harm. Defendants emphasize the fact that plaintiff readily admits the attack was unforeseeable. Plaintiff, however, need not show he was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer v. Brennan, 511 U.S. at 843. A plaintiff may show a substantial risk of harm from a specific assailant, or a more general risk of harm due to the conditions at the time of the attack. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id.; see also Hayes v. N.Y. City Dep't of Corr., 84 F.3d at 621 ("[T]he issue is not whether [plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [plaintiff].").

Here, plaintiff has failed to allege any facts indicating he was subject to a general or specific risk of harm. Plaintiff claims he did not know his assailants or what their motivation for cutting him might have been. According to plaintiff, CO Grisenthwaite left the inmates unattended in the courtyard while she unlocked a door, and plaintiff was attacked while the inmates began to walk inside. Plaintiff does not indicate, however, that CO Grisenthwaite left the inmates unattended for any significant period of time. Furthermore, plaintiff does not allege he was in custody with particularly violence-prone or dangerous inmates.

Second, plaintiff makes no allegations tending to show CO Grisenthwaite or Superintendent Perez had any reason to believe plaintiff was at substantial risk of attack. Plaintiff does not allege he had expressed any fear for his safety prior to the attack, never requested a transfer, and does not mention the security level of the prison.  See, e.g., Fernandez v. N.Y. City Dep't of Corr., 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) ("Absent clear notice of a risk of harm to the prisoner, courts routinely deny deliberate indifference claims based upon surprise attacks.") (internal quotation marks omitted);[2] Zimmerman v. Macomber, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001) ("Plaintiff has alleged no facts suggesting [defendant] had knowledge of any risk.").  In fact, it appears plaintiff himself did not know he had a reason to fear for his safety in the courtyard and plaintiff remains unaware of his assailants' identity.

Instead, plaintiff claims additional security measures "would have probably prevented the attack" and if "there were an extra guard [and if CO Grisenthwaite] didn't leave us outside unattended, it could of probably been prevented."  (SAC at 9).  But plaintiff's speculative and conclusory allegations regarding additional security measures do not suggest that defendants knew of a specific substantial risk to plaintiff's health or safety and failed to take reasonable measures to abate the harm.  See, e.g., Grant v. Burroughs, 2000 WL 1277592, at *3 (S.D.N.Y. Sept. 8, 2000) (noting that negligent supervision is insufficient to establish Section 1983 liability); Sullivan v. Graham, 2011 WL 4424355, at *8 (N.D.N.Y. Aug. 5, 2011), report and recommendation adopted, 2011 WL 4424350 (N.D.N.Y. Sept. 21, 2011) ("[E]ven if defendants were negligent in failing to staff the yard with more people or subject more individuals to metal

---

[2]  Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

detection searches, such staffing shortcomings could not serve as a basis for constitutional relief."); Matthews v. Armitage, 36 F. Supp. 2d 121, 126 (N.D.N.Y. Jan. 25, 1999) ("Additional precautions might have prevented the stabbing here, but the failure to institute such precautions at most constituted negligence.").

Accordingly, plaintiff's failure to protect claim is dismissed.

B.   Inadequate Medical Care Claim

Plaintiff alleges the Downstate medical personnel who evaluated and treated him after the attack provided him with inadequate medical care. This claim must also be dismissed for failure to state a claim because plaintiff neither alleges the personal involvement of defendants, nor does he allege facts stating a claim of deliberate indifference to serious medical needs.

1.   Personal Involvement of Defendants

Plaintiff must allege defendants' personal involvement in the claimed violation of plaintiff's rights. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013). Furthermore, a defendant may not be held liable under Section 1983 solely because that person employs or supervises a person who violated the plaintiff's rights. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

A supervisor's personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

7

custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Plaintiff does not allege any facts demonstrating how defendants Superintendent Perez or CO Grisenthwaite were personally involved in the events underlying his denial of medical care claim.[4] None of plaintiff's submissions include any allegations demonstrating that either defendant was personally involved in providing, or failing to provide, him with medical care following the attack.

### 2. Standard for Denial of Medical Care Claims

Even if plaintiff did adequately allege defendants' personal involvement, plaintiff still fails to state a claim of constitutionally inadequate medical care.

To assert such a claim, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). As in Section 1983 claims of deliberate indifference to safety, deliberate indifference to medical needs is established through both objective and subjective standards: plaintiff must plead facts showing (i) the alleged deprivation of medical care was "sufficiently serious," and (ii)

---

[3] After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of N.Y. 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

[4] Plaintiff does not allege any facts showing how defendant Perez was personally involved in plaintiff's failure to protect claim either, which provides additional grounds for dismissing that claim as to defendant Perez. Plaintiff simply claims defendant Perez, in her role as superintendent of Downstate, "is in charge of the facility [and] movement [of prisoners]." (SAC at 11). These allegations, however, are insufficient to plead personal involvement of Perez under either Colon v. Coughlin or Ashcroft v. Iqbal.

8

the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

a. Objective Component

Even if plaintiff's injuries were objectively serious,[5] plaintiff's claim fails on the first subpart of the objective component because he does not plausibly allege he was deprived of reasonably adequate medical care. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Although plaintiff takes issue with his treatment at Downstate, insisting stitches were needed and he should have been transferred to an outside hospital, plaintiff does not suggest any reason why receiving stitches was the only acceptable treatment for his cut, particularly in light of the fact that plaintiff did not report the attack until the following morning. Moreover, plaintiff

---

[5] There is case law in the Second Circuit supporting the claim that a visible scar is sufficiently serious. See Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) (scar that interfered with daily activities was serious condition).

does not claim he was denied medical treatment altogether, nor does he allege facts demonstrating how the medical care he did receive was inadequate.

### b. Subjective Component

Plaintiff's claim also fails the subjective component because plaintiff does not plausibly allege defendants' deliberate indifference to his medical needs. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result[,] and entails more than mere negligence." Salahuddin v. Goord, 467 F.3d at 280 (quoting Farmer v. Brennan, 511 U.S. at 839–40).

In his opposition brief, plaintiff claims that while in protective custody, he requested to be seen by medical staff but his request was denied. Plaintiff alleges a doctor walked past his cell and "was very disrespectful" to plaintiff, ignoring him and saying "some [h]arsh words." (Pl.'s Opp'n 7).

These facts, however, do not plausibly allege that the unnamed doctor—or any other Downstate medical personnel—acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d at 80 (2d Cir. 2006). "[A]lthough a § 1983 claim can be based on a significant delay in receiving medical treatment, a plaintiff must allege that the individuals causing the delay had the requisite state of mind, which we have noted is the equivalent of criminal recklessness." Jones v. Vives, 523 F. App'x. 48, 50 (2d Cir. 2013) (internal quotation marks omitted). In other words, "the charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin v. Goord, 467 F.3d at 280 (emphasis added). From the awareness requirement, it follows that "mere negligence is not actionable, nor is mere

medical malpractice . . . tantamount to deliberate indifference." Green v. McLaughlin, 480 F. App'x 44, 48 (2d Cir. 2012) (internal quotation marks omitted).

Here, plaintiff's claim that a doctor was disrespectful and declined to see him upon plaintiff's request is not sufficient to allege such doctor's behavior rises above the level of "mere negligence." Plaintiff does not claim he was denied medical care altogether, nor does he allege why immediate care was needed at the time he was rebuffed by the doctor in protective custody. "The mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference." Crique v. Magill, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013). Accordingly, plaintiff's denial of adequate medical care claim is dismissed.

III.   Leave to Amend

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). A court must grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999).

Here, plaintiff already amended his complaint once pursuant to the Court's order to amend. (Doc. #8).[6] Having already granted plaintiff leave to amend his failure to protect claim,

---

[6] The order to amend explained in detail that plaintiff must state facts that would establish defendants acted "with deliberate indifference" to his safety, beyond mere negligence. See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011). The order to amend further directed plaintiff to state facts that would establish how each named defendant personally participated in the violation of his rights. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). On September 25, 2015, plaintiff filed an amended complaint in response to the order to amend. (Doc. # 9). He

11

and finding no basis in the SAC, liberally read, upon which plaintiff might state a valid claim, the Court declines to grant plaintiff leave to amend the failure to protect claim yet again. In short, further repleading of this claim would be futile.

As to plaintiff's deliberate indifference to serious medical needs claim, even liberally construed, the SAC does not contain allegations suggesting plaintiff has a valid claim that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that further repleading would be futile because the problems with plaintiff's claim are substantive, and supplementary or improved pleading will not cure the deficiencies of the SAC. See id.

Accordingly, the Court declines to grant plaintiff leave to amend again.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #38) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: January 13, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

then filed the operative SAC on March 23, 2016, naming defendant Jill Grisenthwaite. (Doc. # 23).